UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTRACOASTAL CAPITAL, LLC, | Case No. |
| Plaintiff, | **COMPLAINT** |
| -against- | |
| BEYOND AIR INC. f/k/a AIT THERAPEUTICS, INC., | |
| Defendant. | |

Plaintiff Intracoastal Capital, LLC ("Intracoastal"), by its attorneys, Olshan Frome Wolosky LLP, for its Complaint against Defendant Beyond Air Inc. f/k/a AIT Therapeutics, Inc. ("AIT" or the "Company"), hereby alleges, on the basis of knowledge with respect to itself and its actions and on the basis of information and belief as to other matters, as follows:

## INTRODUCTION

1.      Intracoastal brings this breach of contract action based on AIT's refusal to honor the anti-dilution provisions contained in a warrant agreement, notwithstanding that New York Courts previously held in two separate actions brought by other investors that AIT's refusal breached the agreement. Given that, AIT's refusal is in bad faith.

2.      In 2016, Intracoastal and other investors, including funds managed by Empery Asset Management (the "Empery Funds") and Hudson Bay Master Fund, Ltd. ("Hudson Bay"), entered into a warrant agreement (the "Warrant" or "Warrant Agreement") in which they acquired warrants to acquire AIT stock. The form of the Warrant was initially negotiated and agreed to by AIT and another investor in the transaction, Deerfield Special Situations Fund, L.P. ("Deerfield"), before being circulated to additional investors, including Intracoastal.

3.      Subsequently, in 2018, the Company completed a dilutive issuance by issuing shares at a lower price, but it refused to make the anti-dilution adjustments required under the Warrant Agreement. In refusing to do so, the Company purported to rely, in part, on the scrivener's error in the Warrant Agreement to avoid its plain and obvious terms.

4.      Following AIT's refusal to honor the economic bargain struck in the Warrant Agreement, the Empery Funds brought suit (the "*Empery* Action") asserting that AIT had breached the Warrant Agreement, and, after a three-day bench trial before Justice Cohen, the Empery Funds prevailed.

5.      In its decision, which is equally applicable to the present dispute, the Court held as follows:

> The evidence shows that both AIT and the Empery Funds intended, at the time of the transaction, for the Warrants to provide for 'full ratchet' anti-dilution protection—*i.e.*, an adjustment to both the share price and number of warrant shares upon any subsequent issuance of AIT securities at a lower price.

6.      Importantly, the Court came to this conclusion despite the fact that Deerfield, and not the Empery Funds, led the negotiations that resulted in the inclusion of the anti-dilution protections in the Term Sheet and Warrant that were circulated to all investors:

> Moreover, given that the same form of Warrant Agreement would be used with all warrant holders, the Court finds that AIT (led by Mr. Avniel) understood that the Share Adjustment protection negotiated by Deerfield would apply to all warrant holders, including Empery.

7.      In *Hudson Bay Master Fund Ltd. v. Beyond Air Inc.*, Index No. 657185/2021 (Sup. Ct. N.Y. Co.) (the "*Hudson Bay* Action"), the Court ruled that AIT was estopped from re-litigating the issues resolved in the *Empery* Action. The Court ruled: "plaintiff's motion for partial summary judgment that defendant AIT may not relitigate the issues of: (1) AIT's own

12148478-3

intent, (2) the required exercise price adjustment and (3) the methodology to calculate damages, is granted." (Order dated January 10, 2023)

8. Notwithstanding the Court's holding in the *Empery* Action and the *Hudson Bay* Action, the Company has continued in its refusal to provide full ratchet anti-dilution protection to Intracoastal by making corresponding price and share adjustments to Intracoastal's Warrants. When Intracoastal exercised its Warrant in October 2021, AIT refused to deliver approximately 51,529 shares, with a value in excess of $500,000, in breach of the Warrant.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). This is a dispute between plaintiff, a citizen of one or more states, and defendant, a citizen of a foreign state that is not a legal permanent resident of this State or any State where plaintiff is a citizen, and the amount in controversy exceeds the sum of $75,000 exclusive of interest. In addition, in the Securities Purchase Agreement with Intracoastal, AIT consented "to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan…"

10. Pursuant to Section 15 of the Warrant, AIT consented to jurisdiction and venue in the "State and Federal Courts sitting in the City of New York, Borough of Manhattan." Jurisdiction and venue are therefore appropriate.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claim occurred in this District and Defendant has consented this District.

## THE PARTIES

12. Intracoastal is limited liability company organized under the laws of Delaware. Intracoastal has three members, two of whom are citizens of Florida and one, a citizen of Tennessee.

12148478-3

13.    Defendant AIT Therapeutics, Inc., now known as Beyond Air Inc., is a Delaware corporation with its principal office in Ness Ziona, Israel. Defendant is a clinical-stage medical device company that is developing a proprietary formulation to treat certain respiratory infections. Defendant's shares of common trade are under the symbol "XAIR." Because all the relevant documents at issue were between Intracoastal and Defendant's predecessor, AIT, references to the Defendant in this action are to AIT, XAIR's prior namesake, rather than to XAIR.

## THE INTRACOASTAL WARRANT

14.    Intracoastal is the holder of a Warrant to purchase common stock issued by Defendant AIT on January 13, 2017. Intracoastal originally was issued a Warrant to purchase 8,333 shares of AIT stock at an exercise price of $6.90 per share. The Warrant has a five-year term. A copy of Intracoastal's Warrant is annexed hereto as Exhibit A.

15.    Subsequently, after the Company failed to raise certain funds, the number of Warrant shares available to Intracoastal doubled pursuant to Section 3(h) of the Warrant. Accordingly, as of March 2017, Intracoastal held a warrant to purchase 16,666 shares of AIT common stock, with an exercise price of $6.90 per share.

## INTRACOASTAL OBTAINED "FULL RATCHET" ANTI-DILUTION PROTECTION IN THE EVENT OF A DILUTIVE ISSUANCE

16.    "Full ratchet" anti-dilution protection was essential to Intracoastal's investment in AIT, which, at the time, was a startup. Such a provision protects investors, like Intracoastal, from a reduction in the value of its investment if a company subsequently issues securities at a lower price.

17.    Deerfield was the lead investor in the transaction with AIT, and negotiated the terms of the Warrant through the exchange of drafts of the Warrant prior to its circulation to all

4

other investors. As revealed in the *Empery* Action, the topic of full ratchet anti-dilution
protection was explicitly raised in negotiations between Deerfield and AIT, with AIT initially
attempting to strike those protections from the language of the Warrant.

18.     Through, among other things, calls from Deerfield's counsel, Deerfield made
clear that full ratchet anti-dilution protection was required, and demanded that such protection be
'put back into the warrant' as a condition of signing.

19.     The Company reluctantly agreed. AIT's chief executive officer, Mr. Avniel,
instructed AIT's counsel to 'leave the full ratchet' in the Warrant.

20.     A Term Sheet and SPA were thereafter circulated to investors, in late December
2016. The Company intended that the terms of the Warrant negotiated by Deerfield would apply
equally to all Warrant holders.

21.     Intracoastal understood the transaction to include full ratchet anti-dilution
protection. The nature of the transaction -- the purchase of stock and warrants in a small startup
for which there was no public market -- necessitated inducing investors through comprehensive
anti-dilution protections. Intracoastal was advised by AIT's banker at Roth Capital that the
transaction was one involving full ratchet protections. Intracoastal would never have invested
without the assurance that it would be protected if AIT did a dilutive offering.

### THE DILUTIVE ISSUANCE

22.     In late 2017, AIT retained Maxim Group LLC ("Maxim") to act as its placement
agent in connection with an anticipated capital raise. By January 24, 2018, the proposed terms of
the transaction offered by AIT in connection with that raise consisted of issuing common stock at
$4.25 per share, with a warrant exercisable at $4.25 per share for no additional consideration.
That was well below the exercise price in the Intracoastal Warrant Agreement, as discussed
below.

12148478-3

23.     Counsel for Maxim alerted counsel for AIT in an email exchange on January 25, 2018 that the new issuance would trigger AIT's obligation to adjust the price and number of shares under Section 3(b) of the Warrant Agreement. However, AIT refused to disclose that fact, leading Maxim to withdraw from the deal. Maxim advised AIT in an email that "Maxim will not be able to participate in the transaction absent [disclosure of] the warrant issue as a risk factor."

24.     Thereafter, AIT retained a new placement agent, Laidlaw & Company (UK) Ltd. ("Laidlaw"), and entered into a securities purchase agreement (the "SPA") with certain investors on February 16, 2018 (the "Dilutive Issuance.")

## THE ADJUSTMENT REQUIRED AS A RESULT OF THE DILUTIVE ISSUANCE

25.     The Tranche B Warrants sold pursuant to the Dilutive Issuance had an exercise price of $4.25 per share and a five-year term. According to the valuation method specified in Section 3(d) of the Intracoastal Warrant, each Tranche B Warrant issued under the SPA had a value of $2.69 per warrant. The formula is set forth in Sections 3(c)(i) and 3(d) of the Intracoastal Warrant.

26.     Under Section 3(d), when an option like the Tranche B warrant is issued, the contract's valuation formula is applied and the value of the option is deducted from the total consideration to determine the net amount paid for the other security, namely the Tranche A Warrant or the common stock underlying the Tranche A Warrant.

27.     More specifically Section 3(d) of the Warrant provides as follows:

> …the Options will be deemed to have been issued for a consideration equal to the greatest of (I) $0.01, (II) the specific aggregate consideration, if any, allocated to such Options, and (III) the sum of the Black-Scholes values of each such Option, determined by use of the Black-Scholes Option Pricing Model applying the applicable criteria set forth on Schedule I hereto (the greatest of (I), (II) and (III), the "Option Consideration"), and for purposes of applying the provisions of this Section 3(d). The Option Consideration shall be allocated pro rata among all the

6

Common Stock issuable upon exercise of such Options to
determine the consideration per each such Ordinary Share and (B)
the other securities will be deemed to have been issued for an
aggregate consideration equal to the aggregate consideration
received by the Company for the Options and other securities
(determined as provided below with respect to each share of
Common Stock represented thereby), less the Option
Consideration.

28.     As adjudicated in the *Empery* Action and the *Hudson Bay* Action, the application

of this formula resulted in a value of $2.69 per Tranche B Warrant as of February 15, 2018, and,

accordingly, $1.57 per share of common stock underlying the Tranche A Warrants.

### THE EMPERY DECISION

29.     After a three-day bench trial, the Court issued its 40-page Decision on October

14, 2021 (the "*Empery* Decision"), finding in favor of the Empery Funds. A copy of the *Empery*

Decision is annexed hereto as <u>Exhibit B</u>. The First Department later affirmed in *Empery Master*

*Fund Ltd. v. AIT Therapeutics Inc*., Appeal No. 17414 (March 23, 2023),

### THE HUDSON BAY DECISION

30.     On December 28, 2021, Hudson Bay filed a lawsuit against AIT alleging breach

of contract and mutual mistake.

31.     On December 8, 2022, the Court ruled in favor of Hudson Bay in its partial

motion for summary judgment, finding that "[i]t is undisputed that plaintiff Hudson Bay is a

warrant holder. Therefore, what the Empery court already found after a full trial regarding AIT'd

intent collaterally estops AIT from relitigating the same issue here."

32.     The Court noted that the *Empery* case "involved the same form contract language,

the same defendant, and the same lead investor (Deerfield) who negotiated the form contract as

in this case"

7

12148478-3

33.     The Court explained that it saw "no reason why defendant would not be collaterally estopped on [the price adjustment issue] as it had a full and fair opportunity to litigate the issue in the *Empery* trial."

34.     The Court also held that collateral estoppel precluded AIT from relitigating the methodology to calculate damages.

> [W]hile the inputs into the formula will be different in this case, the issue of the method to calculate damages was already determined in the other case. Specifically, the *Empery* court measured damages by multiplying the amount of shares AIT owed to plaintiff by 'the midpoint between the high and the low trading price for defendant's common stock '[id at *21] (on the date AIT failed to deliver the shares) minus 'the additional exercise price that would have been paid based on the operation of a Warrant at $1.57 per share.

35.     The Court's Order, dated January 10, 2023, summarized its rulings, "Plaintiff's motion for partial summary judgment that defendant AIT may not relitigate the issues of: (1) AIT's own intent, (2) the required exercise price adjustment and (3) the methodology to calculate damages, is granted." (Order, dated January 10, 2023)

**THE COMPANY'S REFUSAL TO HONOR PRICE AND SHARE ADJUSTMENTS**

36.     Intracoastal shared the same understanding of the Warrant as the Empery Funds and Hudson Bay. Intracoastal is entitled to the same "Price Adjustment" and "Share Adjustment" as determined by the Court in the *Empery* Decision. Accordingly, the exercise price of the Warrant must be reduced to $1.57, and the number of shares must be increased to 73,245 shares, effective as of the Dilutive Issuance in 2018.

37.     On October 19, 2021, Intracoastal submitted a cashless exercise of the Warrant to the Company. As a result of that notice, the Company was obligated to deliver the Warrant shares no later than the standard settlement date, T+2. Under the cashless exercise, Intracoastal

12148478-3

was entitled to receive 62,493 shares, but AIT delivered only 10,694 shares. The Company breached the Warrant by failing to deliver 51,529 shares that were due on October 21, 2021.

38.     AIT has no good faith basis to deny the price and share adjustments to the Intracoastal Warrant. Intracoastal is not distinguishable from the Empery Funds or Hudson Bay in any material respect. Like the Empery Funds and Hudson Bay, Intracoastal did not "believe[] that the [s]hare [p]rotection provision was limited to the narrow circumstances of a zero-consideration issuance of shares."

39.     Pursuant to its Warrant, Intracoastal is now entitled to damages in the aggregate amount of at least $520,442.90, based on a value of $10.10 per XAIR share, which represents the midpoint between the high and low trading price for defendant's common stock on October 21, 2021.

## FIRST CLAIM FOR RELIEF (BREACH OF CONTRACT)

40.     Plaintiff restates the allegations in paragraphs 1 – 39.

41.     As set forth above, AIT breached the Warrant by failing to deliver the correct number of shares that were due on exercise.

42.     As a direct, proximate and foreseeable result of defendant's breach, Intracoastal has suffered losses in an amount estimated to be at least $520,442.90.

## SECOND CLAIM FOR RELIEF (REFORMATION – MUTUAL MISTAKE)

43.     Plaintiff restates the allegations in paragraphs 1 – 42.

44.     In light of the *Empery* Action, AIT is collaterally estopped from re-litigating the share and price adjustments required under the Warrant.

45.     Reformation is required because the parties were mistaken about the language in Section 3(b) of the Warrant to the extent it could be read to limit the Warrant's anti-dilution protections to the issuance of common stock without consideration. The words "immediately

12148478-3

preceding sentence" in Section 3(b) should have been "immediately preceding sentences" to give effect to the intent of the parties.

46.     AIT's interpretation of Section 3(b) materially alters the agreed-upon exchange of promises and the economic terms of the deal because it effectively denies Hudson Bay the agreed-upon anti-dilution protections.

47.     Plaintiff did not assume the risk of the mistake in the Warrant or otherwise. Nor would it be reasonable for the Court to allocate the risk of mistake to Plaintiff.

48.     Plaintiff has no adequate remedy at law.

49.     Accordingly, Plaintiff requests that the Court reform Section 3(b) of the Intracoastal Warrant as set forth above and upon reformation determine that AIT breached the Warrant as set forth in the first claim for relief.

50.     In light of the *Empery* Action and the *Hudson Bay* Action, AIT is collaterally estopped from re-litigating the issue of reformation of the Warrant.

WHEREFORE, Plaintiff respectfully requests that the Court award judgment as follows:

A.     On the first claim for relief, awarding Plaintiff damages in an amount estimated to be at least $520,000.

B.     On the second claim for relief, reforming the Warrant so that the third sentence in Section 3(b) of the Intracoastal Warrant is revised to substitute the word "sentences" for the word "sentence" and awarding Plaintiff damages in an amount estimated to be at least $520,000.

C.     Pre- and post-judgment interest and

D.     Granting such other and further relief as the Court deems just and proper.

12148478-3

Dated: New York, New York
       July 24, 2023

                                      OLSHAN FROME WOLOSKY LLP

                               By:  /s/ Thomas J. Fleming
                                     Thomas J. Fleming
                                     Stephen P. Ross
                                     *Attorneys for Plaintiff*
                                     1325 Avenue of the Americas
                                     New York, New York 10019
                                     (212) 451-2300

12148478-3